IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:19-cv-386

MARY SMITH and GEORGE SMITH, )
Individually, and MARY SMITH, as )
Administrator of the ESTATE OF )
MARCUS DEON SMITH, deceased, )
)
      Plaintiffs, )
)
v. ) **COMPLAINT**
) **(Jury Trial Demanded)**
CITY OF GREENSBORO, GUILFORD )
COUNTY, Greensboro Police Officers )
JUSTIN PAYNE, ROBERT DUNCAN, )
MICHAEL MONTALVO, ALFRED LEWIS, )
CHRISTOPHER BRADSHAW, LEE ANDREWS, )
DOUGLAS STRADER, and JORDAN BAILEY, )
and Guilford EMS Paramedics ASHLEY ABBOTT )
and DYLAN ALLING, )
)
      Defendants. )
)

      Plaintiffs MARY SMITH and GEORGE SMITH, Individually, and MARY SMITH, as

Administrator of the ESTATE OF MARCUS DEON SMITH, deceased, by their attorneys,

PEOPLE'S LAW OFFICE and THE LAW OFFICE OF GRAHAM HOLT, for their complaint

against Defendants CITY OF GREENSBORO, GUILFORD COUNTY, Greensboro Police

Officers JUSTIN PAYNE, ROBERT DUNCAN, MICHAEL MONTALVO, ALFRED LEWIS,

CHRISTOPHER BRADSHAW, LEE ANDREWS, DOUGLAS STRADER, and JORDAN

BAILEY, and Guilford Emergency Medical Service Paramedics ASHLEY ABBOTT and

DYLAN ALLING, state:

## PRELIMINARY STATEMENT

1. Plaintiffs Mary Smith and George Smith bring this civil rights action for damages and other relief for the death of their son, Marcus Deon Smith. Marcus appears in this action through his mother, Mary Smith, the administrator of his estate. The Defendant Greensboro Police Officers caused Marcus's death by brutally restraining him prone on the ground and hogtying him like an animal until he stopped breathing, and the Defendant Guilford County EMS Paramedics, who were called to the scene, failed to intervene to protect Marcus from the use of unreasonable force and failed to promptly attend to his serious medical needs.

2. The force was unnecessary, unreasonable and excessive because Marcus was not engaged in any criminal conduct, was unarmed, made no threats to the police or others, presented no immediate danger to the officers, himself or to others, was not actively resisting arrest, and was particularly vulnerable to the excessive force because of his delusional and agitated mental state.

3. The written and *de facto* policies, practices and customs of Defendant City of Greensboro and its Police Department contributed to and were a moving force behind Marcus's death, as the Defendant officers were acting pursuant to these policies, practices and customs, that included the use of restraint devices to hogtie people who are in a prone position, and the treatment of people who experience mental health crises.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

5. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). Defendants City of Greensboro and Guilford County are located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

7. Plaintiffs Mary Smith and George Smith are the parents of Marcus Deon Smith and his sole heirs.

8. Plaintiff Mary Smith is Marcus Deon Smith's mother and has been appointed by the Guilford County Clerk of Superior Court, North Carolina to serve as the administrator of his estate.

9. Defendant City of Greensboro is a North Carolina municipal corporation, was the employer of the individual police officer defendants, and is liable for their actions which violate North Carolina law pursuant to the doctrine of *respondeat superior*. Defendant City of Greensboro is additionally responsible for the policies, practices, and customs of the Greensboro Police Department as set forth more fully herein.

10. Defendant Guilford County was the employer of the individual EMS paramedic defendants, and is liable for their actions which violate North Carolina law pursuant to the doctrine of *respondeat superior*.

11. Defendant Justin Payne was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

12. Defendant Robert Duncan was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

13. Defendant Michael Montalvo was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

3

14. Defendant Alfred Lewis was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

15. Defendant Christopher Bradshaw was at all times relevant to this action employed as a police sergeant in the Greensboro Police Department.

16. Defendant Lee Andrews was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

17. Defendant Douglas Strader was at all times relevant to this action employed as a police sergeant in the Greensboro Police Department.

18. Defendant Jordan Bailey was at all times relevant to this action employed as a police officer in the Greensboro Police Department.

19. Defendant Ashley Abbott was at all times relevant to this action employed by Guilford County as an Emergency Medical Services paramedic.

20. Defendant Dylan Alling was at all times relevant to this action employed by Guilford County as an Emergency Medical Services paramedic.

21. Each of the individual defendants named above engaged in the conduct complained of under color of state law and in the course and scope of his or her employment. Each of the individual defendants is sued in his or her individual capacity.

## FACTUAL ALLEGATIONS

### The Death of Marcus Deon Smith

22. Marcus Deon Smith was a 38 year-old African American man, who had been diagnosed with bipolar disorder and schizophrenia. His mental health disability manifested in episodes of psychosis, with symptoms including, but not limited to, delusions, paranoia,

4

hallucinations and altered mental status, and it substantially limited major life activities including, but not limited to, concentrating, thinking and communicating.

23. On September 8, 2018, shortly after midnight, Defendant Greensboro Police Officers Payne, Duncan, Montalvo, Lewis, Bradshaw, Andrews, Strader, and Bailey encountered Marcus on North Church Street in Greensboro near the North Carolina Folk Festival that was happening downtown.

24. Marcus was pacing back and forth in the street and running around in circles. He appeared exasperated and frantic and was waving his arms in the air. He begged the officers for help, repeatedly stating, "Please help me, sir," and to be taken to the hospital.

25. Defendants believed that Marcus was under the influence of drugs.

26. It was also clear to these Defendants that Marcus was extremely agitated, afraid, and in the throes of a mental health crisis.

27. Marcus was unarmed, was not violent, and was not trying to flee.

28. Defendants called an ambulance to take Marcus to a hospital. While waiting for the ambulance to arrive, Defendants asked Marcus to get in the back of one of the police cars and told him they would take him to the hospital.

29. Marcus voluntarily entered the back of a police car, but after a short period of time of being alone in the car with no one driving him to the hospital as Defendants told him they would do, he began to panic and thrash around because he wanted to get out.

30. Marcus was not under arrest. He tried to open the door of the car, but it was locked, so he banged his hand against the window to get the Defendants' attention.

31. Defendant Duncan then stated, "we probably ought to RIPP Hobble him."

5

32. A RIPP Hobble is a restraint device used by police that is manufactured by a company called RIPP Restraints International. It consists of a belt-like strap made of polypropylene that is placed around an arrestee's ankles to restrain their feet. The other end of the strap contains a hook and can be attached to the arrestee's handcuffs.

33. By this time, Defendants Guilford County Emergency Medical Service paramedics Ashley Abbott and Dylan Alling arrived on the scene.

34. Defendant Strader spoke with Defendant Abbott and reported his observations of Marcus's behavior. Defendant Abbott responded by asking, "is he a black guy?" to which Defendant Strader responded, "yes."

35. The police Defendants then opened the door of the car and Marcus quickly got out.

36. Marcus did not kick or hit or threaten any of the Defendants or others as he got out of the car.

37. Defendant Duncan grabbed Marcus, and he and the other police Defendants forced Marcus down to the ground and then rolled Marcus onto his stomach in the prone position.

38. Marcus cried out in pain and said, "please don't do that!" and "I'm not resisting!" Marcus was grunting and groaning and moving his body, but he was not actively resisting the Defendants.

39. While the police Defendants held Marcus down, Defendant Duncan handcuffed Marcus's hands behind his back.

40. Defendants then hogtied Marcus while he was prone on the ground. Defendant Payne grabbed Marcus's ankles and pushed Marcus's feet toward his hands with extreme and

6

unnecessary force, bending Marcus's knees well beyond a 90 degree angle. Defendant Payne pushed Marcus's feet all the way to the point that they were touching his handcuffed hands at the small of his back.

41.  Defendants Duncan, Andrews and Montalvo used the RIPP Hobble device to bind Marcus's hands to his feet behind his back while Defendant Payne continued to violently push Marcus's feet toward his back, causing Marcus's knees to continue to be bent well beyond a 90 degree angle.

42.  Defendants Andrews and Montalvo then tightened the strap on the RIPP Hobble device so tight that Marcus's shoulders and his knees were suspended above the ground.

43.  Defendants' unreasonable use of force placed extreme stress on Marcus's chest and severely compromised his ability to breathe.

44.  During the course of this brutal hogtying, Marcus was wheezing, moaning, groaning, gasping for air, and in obvious respiratory and physical distress.

45.  Marcus's breathing quickly became strained and less than half a minute later he became unable to breathe and was unresponsive.

46.  During and after the hogtying, Defendants allowed Marcus to remain prone on his stomach, with his knees bent well beyond 90 degrees, and they failed to continuously monitor Marcus's condition and breathing.

47.  Defendants Lewis, Bradshaw, Strader and Bailey were either holding Marcus down or standing right next to him during the prone restraint and hogtying. They each had the opportunity, duty and ability to intervene on behalf of Marcus, but failed to do so.

48. Defendants Abbott and Alling were also standing next to Marcus during the prone restraint and hogtying. They each had the opportunity, duty and ability to intervene on behalf of Marcus, but failed to do so.

49. A few moments after Marcus stopped breathing, one of the police Defendants looked down and saw that Marcus's eyes were closed and ascertained that Marcus was unresponsive.

50. Defendants then placed Marcus on a gurney to move him inside of an ambulance.

51. Defendants Abbott and Alling knew Marcus was unconscious, unresponsive and not breathing, yet waited longer than two minutes to begin any resuscitative efforts. When they finally placed Marcus in the ambulance and attempted to resuscitate him, their efforts were unsuccessful.

52. The North Carolina Office of the Chief Medical Examiner determined that the manner of death was "homicide" and the cause of death was "sudden cardiopulmonary arrest due to prone restraint; n-ethylpentalone, cocaine, and alcohol use; and hypertensive and atherosclerotic cardiovascular disease."

53. Throughout this incident, Marcus presented a purely medical and mental health problem, not a law enforcement problem. Marcus had not committed a crime, he was not engaged in any criminal conduct, he was unarmed, he made no threats to the Defendants or others, he presented no immediate danger to the Defendants or others, and he was not actively resisting arrest.

54. Marcus was particularly vulnerable to the potential lethal consequences of hogtying and prone restraint because of his delusional and agitated mental state. Defendants were aware of Marcus's mental state and vulnerability from the moment they encountered him.

55. As a direct and proximate cause of the actions and inactions of Defendants as detailed above and below, Marcus suffered, among other things, bodily injury, pain, suffering, severe emotional distress and death.

56. Defendants' conduct, as alleged herein, was unreasonable, conscience-shocking, and was undertaken in reckless disregard for the consequences to Marcus and his family.

## Policy and Practice Allegations

57. The Greensboro Police Department immediately began a concerted effort to cover up the cause of Marcus's death. The same day Marcus was killed, the GPD issued a press release that contained misinformation, lies, and omissions, stating that Marcus had collapsed while he was in police custody (he did not), that he was combative (he was not), that officers rendered aid (they did not), that he died at the hospital (he died face down on the street), and blatantly omitting that Marcus was taken to the ground by the police and forcibly restrained and hogtied.

58. At the time of the incident, the GPD had a written policy in its Directives Manual concerning the use of a RIPP Hobble. GPD Directive 11.1.4, *Handling and Transporting of Persons in Custody – Restraint*, stated:

> At no time shall the wrists and ankles of an arrestee be linked together using the RIPP HOBBLE restraining device, unless the arrestee can be seated in an upright position, or on their side. If this is done, the knees of the arrestee will not be bent more than 90 degrees (unless extenuating circumstances exist) to prevent stress being placed on the arrestee's chest muscles or diaphragm which might contribute to a positional asphyxia situation. . . . It is the responsibility of the arresting officer to ensure the arrestee is under direct observation from the time he is restrained in this manner until the restraints are removed or the custody of the arrestee is turned over to another agency.

59. Following Marcus's death, Greensboro Police Chief Wayne Scott stated that the GPD Directive only applied to the transport of persons in custody, and since Marcus was dead before they got to the point of transporting him, the Directive did not apply. Chief Scott further

9

stated that the department did not have a specific directive on applying the RIPP Hobble, or hogtying, restraint prior to transporting detainees.

60. The manufacturer of the RIPP Hobble provides a bold faced warning with the product that reads: "NEVER Hog-Tie a Prisoner."

61. None of the Defendant Greensboro police officers received any discipline for their actions and inactions in relation to the death of Marcus Deon Smith, as alleged herein.

62. Defendant City of Greensboro and its Police Department, and their decision makers, including Greensboro Police Chief Wayne Scott, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Decedent, plaintiffs, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied written and *de facto* policies, practices, or customs and usages of, among other things:

    a. failing to train and supervise officers as to whether, under what circumstances, and/or how to use hogtie restraint devices to bind a subject's arms and feet together behind his back;

    b. training, encouraging and/or authorizing officers to use hogtie restraint devices to bind a subject's arms and feet together behind his back without regard to whether a person was a criminal suspect, or was particularly vulnerable to the potential lethal consequences of hogtying;

    c. subjecting people to unreasonable uses of force when they are experiencing symptoms of mental illness and/or drug intoxication, and present a health emergency rather than a law enforcement problem;

10

d.  failing to adequately train officers not to treat people who present mental health issues as criminal suspects in determining whether, when and how they should be restrained or taken into custody;

e.  failing to adequately train, supervise, and control employees in the dangers of use of hogtie restraint devices, especially for people like Marcus Deon Smith, whose physical and mental state make them particularly vulnerable to the lethal effects of hogtie restraint devices, and render such tactics unreasonably dangerous;

f.  failing to implement protocols and train officers in the proper way to contain, treat and secure people like Marcus Deon Smith who are not criminal suspects but who may be in an irrational and/or delusional and/or agitated state because of a mental health crisis;

g.  selecting, retaining, and assigning officers with demonstrable propensities for excessive force, violence, and other misconduct;

h.  failing to adequately monitor, discipline and control officers involved in misconduct;

i.  condoning and encouraging officers in the belief that they can violate the rights of people like Marcus Deon Smith with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

63. Defendant City of Greensboro and its Police Department have a long history of racist police violence and misconduct and deliberate indifference, including, most recently, the targeting of African-Americans for, among other things, driving while black and being downtown while black, and the accompanying use of force, violence, false charges, perjury, and cover up by superiors using the Professional Standards Division, the Chief of Police, the City Manager, the City Attorney, and the City Council, to condone and ratify police misconduct,

11

which causes Greensboro police officers, such as the officers in this case, to believe that they can abuse African American citizens with impunity and with no fear of consequences.

64. Defendant City of Greensboro, its Police Department and their decision makers, including Greensboro Police Chief Wayne Scott, ordered, authorized, acquiesced in, tolerated, permitted and/or maintained customs and usages permitting the other defendants herein to engage in the unlawful and unconstitutional actions, *de facto* and written policies, practices, and customs or usages set forth in the foregoing paragraph.

65. Defendant City of Greensboro has waived its governmental immunity through the purchase of liability insurance that indemnifies it from liability for the acts alleged in this complaint.

## Damages Allegations

66. Plaintiffs have lost the decedent's support, love, comfort and society, and have sustained emotional distress. Plaintiffs incurred burial and other related expenses. Marcus sustained damages, including pre-death pain and suffering and post-death loss of enjoyment of his life.

67. The conduct of the individual defendants was willful, malicious, oppressive and in reckless disregard for the constitutional rights of plaintiffs and the decedent himself, thus justifying punitive damages against the individual defendants.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – Wrongful Death)

68. Each paragraph of this Complaint is incorporated as if restated fully herein.

69. Defendants, acting jointly and in conspiracy and under color of state law, deprived the Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendments to the

12

Case 1:19-cv-00386-LCB-JLW   Document 1   Filed 04/10/19   Page 12 of 18

Constitution, by, among other things, subjecting Decedent to unreasonable and excessive use of force; and/or directing, encouraging and implementing the use of unreasonable and excessive force, and/or failing to intervene on his behalf to stop the use of unreasonable and excessive force having the duty and opportunity to do so; and/or unreasonably failing to promptly attend to his serious medical needs.

70. The foregoing wrongful acts of defendants killed Decedent.

71. As a proximate result, Plaintiffs lost companionship, society, comfort and consortium with the Decedent, and are entitled to damages for the pain, suffering of the Decedent.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – Survival Action)

72. Each paragraph of this Complaint is incorporated as if restated fully herein.

73. Plaintiff Mary Smith brings this cause of action in her capacity as the personal representative of the Decedent.

74. The foregoing claim for relief arose in Decedent's favor, and Decedent would have been the plaintiff with respect to this claim for relief had he lived.

75. Defendants, acting under color of state law, deprived Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendments to the Constitution, by, among other things, subjecting Decedent to unreasonable and excessive force; and/or failing to intervene on his behalf to stop the use of unreasonable and excessive force despite having the duty and opportunity to do so; and/or unreasonably failing to promptly attend to his serious medical needs.

76. The foregoing wrongful acts of Defendants killed Decedent.

77. As a proximate result of the foregoing wrongful acts of Defendants, the decedent sustained damages, including pain and suffering before death, and a loss of the enjoyment of life and other hedonic damages after death.

### THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Deprivation of the Right
### to Familial Relationships with the Decedent)

78. Each paragraph of this Complaint is incorporated as if restated fully herein.

79. Defendants, acting under color of state law, deprived plaintiffs Mary Smith and George Smith of their rights to familial relationships without due process of law in violation of the Fourteenth Amendment by conduct which shocks the conscience, deliberately and without justification of any sort causing injuries which resulted in Decedent's death, all without provocation, and all in violation of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

80. Defendants' conduct, as alleged above, both shocks the conscience and demonstrates a deliberate indifference to the rights of decedent's immediate family.

81. As a proximate result of the foregoing wrongful acts of Defendants, plaintiffs Mary Smith and George Smith sustained damages, including grief, emotional distress and pain and suffering and loss of comfort and society.

### FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – *Monell* Liability)

82. Each paragraph of this Complaint is incorporated as if restated fully herein.

83. At all times relevant to this complaint, Defendant City of Greensboro, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of plaintiffs and Decedent, including the right to be free from unreasonable and excessive force under the Fourth Amendment and Fourteenth Amendment,

maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, one or more of the *de facto* and written policies, practices and customs, individually or together, as alleged above.

84. As a direct and proximate result of the foregoing, Plaintiffs sustained injury and damage as further set forth above.

**FIFTH CAUSE OF ACTION**
**(42 U.S.C. §§ 12131-12134 – Americans with Disabilities Act)**

85. Each paragraph of this Complaint is incorporated as if restated fully herein.

86. Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134) applies to the City of Greensboro and the Greensboro Police Department.

87. The Greensboro Police Department and its operations comprise a program and service for Title II purposes.

88. Marcus Deon Smith had mental health disabilities throughout the time he was in contact with the police Defendants.

89. Defendant City of Greensboro failed and refused to reasonably accommodate Marcus Deon Smith's mental health disabilities and to modify their operations, services, accommodations and programs to reasonably accommodate Marcus's disabilities, in violation of Title II of the ADA.

90. Defendant City of Greensboro's failures cost Marcus Deon Smith his life, and the violations of the ADA are a proximate cause of Marcus's death and the resulting damage to his estate.

91. Plaintiffs are entitled to recover, as the personal representative of the estate of Marcus Deon Smith, for those damages sustained as described in this Complaint as a result of Defendant City of Greensboro's violations of the ADA that caused his death.

15

## SIXTH CAUSE OF ACTION
### (State Law – Wrongful Death)

92. Each paragraph of this Complaint is incorporated as if restated fully herein.

93. Marcus Deon Smith was pronounced dead on September 8, 2018.

94. Marcus Deon Smith was and is survived by his parents, Mary Smith and George Smith, who constitute his heirs under North Carolina law.

95. Plaintiff Mary Smith brings this cause of action in her capacity as the personal representative of the Decedent.

96. The wrongful death of Marcus Deon Smith was proximately caused by the wrongful acts, negligence, neglect, default and/or willful and wanton conduct of the individual Defendants, as described above, in violation of N.C. Gen. State. § 28A-18-2.

97. The Defendants' wrongful conduct was the direct and proximate cause of injury and damage to Marcus Deon Smith and his estate.

98. As a proximate result of the foregoing wrongful acts of Defendants, the decedent sustained damages, including pain and suffering before death, and a loss of the enjoyment of life and other hedonic damages after death.

99. As a proximate result of the foregoing wrongful acts of Defendants, Plaintiffs Mary Smith and George Smith have lost and will continue to lose support, consortium, society, companionship, comfort, as well as the love and affection of their son, and have incurred funeral and burial expenses.

## SEVENTH CAUSE OF ACTION
### (State Law – Battery)

100. The police Defendants wrongfully and intentionally battered the Decedent as set forth above, causing his death.

101. As a direct and proximate result of the foregoing wrongful acts of the police Defendants, Decedent and Plaintiffs sustained injury and damage as further set forth above.

## EIGHTH CAUSE OF ACTION
(*Respondeat Superior*)

102. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

103. In committing the acts alleged in the Sixth and Seventh Causes of Action, Defendants were members of, and agents of, the City of Greensboro and Guilford County, acting at all relevant times within the scope of their employment.

104. Defendants City of Greensboro and Guilford County are therefore liable for the acts of the Defendants whom they employed which violated state law under the doctrine of *respondeat superior*.

## RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and against Defendants, awarding substantial compensatory damages, attorneys' fees and costs against each Defendant, and, because they acted in a malicious and or/ willful and wanton manner, punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: April 10, 2019                              Respectfully submitted,

                                                                s/ Graham Holt
                                                                Graham Holt
                                                                 THE LAW OFFICE OF GRAHAM HOLT
                                                                 Post Office Box 41023
                                                                 Greensboro, North Carolina 27404
                                                                 Phone:(336) 501-2001
                                                                 gholtpllc@gmail.com

                                                                Ben H. Elson[1]
                                                                G. Flint Taylor
                                                               Christian E. Snow
                                                                PEOPLE'S LAW OFFICE
                                                                1180 N. Milwaukee Avenue
                                                                Chicago, Illinois  60642
                                                                Phone: (773) 235-0070
                                                                Fax: (773) 235-6699
                                                                ben.elson79@gmail.com
                                                                flint.taylor10@gmail.com
                                                                christianesnow@gmail.com

                                                                Attorneys for Plaintiffs

---

[1] Illinois counsel will be filing applications to appear Pro Hac Vice.