IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No. 1:19-CV-386

| | |
|---|---|
| MARY SMITH, as Administrator of the ESTATE OF MARCUS DEON SMITH, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GREENSBORO, Greensboro Police Officers JUSTIN PAYNE, ROBERT DUNCAN, MICHAEL MONTALVO, ALFRED LEWIS, CHRISTOPHER BRADSHAW, LEE ANDREWS, DOUGLAS STRADER, and JORDAN BAILEY, and Guilford EMS Paramedics ASHLEY ABBOTT and DYLAN ALLING,<br><br>Defendants. | **BRIEF IN SUPPORT OF THE CITY OF GREENSBORO'S MOTION TO STAY THE OPERATION OF THE ORDER TO PRODUCE BODY-WORN CAMERA FOOTAGE PENDING FILING AND DISPOSITION OF OBJECTIONS** |

The City of Greensboro (the "City") respectfully submits this brief in support of its motion to stay the operation of the Order to produce body-worn camera footage ("BWC"), (D.E. 96), pending the filing and determination of objections the City intends to make pursuant to Federal Rule of Civil Procedure 72.

**Nature of the Matter Before the Court and Factual Background**

Plaintiff brought this lawsuit after the death of her son, Marcus Smith, by filing a Complaint on 10 April 2019. (D.E. 1.) After the Court ruled on Defendants' motions to dismiss, (D.E. 20, 22, 25), four claims remain: (1) 42 U.S.C. § 1983 – Wrongful

1

Death; (2) 42 U.S.C. § 1983 – Survival Action; (4) 42 U.S.C. § 1983 – *Monell* Liability, only under a failure-to-train theory; and (6) State Law – Wrongful Death. (*Id.*)

Discovery in this case has been thorough and remains ongoing. On 19 August 2020, the City responded to discovery requests served by Plaintiff. (D.E. 85-2.) In answering a request for production for "[a]ll documents and communications pertaining to other incidents where RIPP Hobble or similar restraint devices were used to hogtie or otherwise restrain arrestees or persons otherwise in GPD custody," (D.E. 85-1 ¶ 3), the City produced 327 incident reports that involved the use of a hobble, (D.E. 87 at 3). None of these unrelated incidents involved Mr. Smith. On 20 November 2020, Plaintiff, for the first time, requested all the BWC associated with these unrelated incidents. (D.E. 85-4.)

On 15 January 2021, Plaintiff moved to compel the BWC of incidents involving restraint by a hobble device (1) by any GPD officer for a two-year period preceding 8 September 2018 and (2) by one of the Defendant officers without limitation as to time. (D.E. 85.) The City responded to the motion on 5 February 2021, arguing that the BWC Plaintiff sought was not relevant or proportional to Plaintiff's remaining claims and that under N.C. Gen. Stat. § 132-1.4A, the City is not permitted to release BWC without a North Carolina Superior Court order. (D.E. 87.) Along with the response, the City filed Declarations by Greensboro's Chief of Police Brian L. James, (D.E. 88), and Greensboro Police Department ("GPD") Lieutenant Adam Bell, (D.E. 89), outlining the burden on the

GPD if Plaintiff's motion were to be granted. Plaintiff replied on 17 February 2021. (D.E. 91.) The motion and response raised issues of first impression.

On 28 April 2021, the Court granted Plaintiff's motion in part. (D.E. 96.) It ordered the City to produce BWC corresponding to 50 incidents in which a hobble was used that most closely precede 8 September 2018. (*Id.*) The BWC from those 50 incidents must be produced within 45 days of the Court's Order, 14 June 2021. (*Id.*) A significant part of the Order is premised on the Court's contention that the ruling would somehow reduce, or diminish, the burden on the GPD.

Pursuant to Federal Rule of Civil Procedure 72(a), the City intends to timely file and serve written objections to the Order which will then be considered and ruled upon by the District Court Judge. Under Rule 72(a), the objections are due by 12 May 2021. In the instant motion the City moves under Local Rule 72.3 to stay the operation of the Order pending the Court's review and determination of these objections.

## Question Presented

Whether the operation of the Order, which requires the City to produce BWC corresponding to 50 incidents involving the use of a hobble within 45 days, should be stayed pending the Court's ruling on the City's objections to it pursuant to Rule 72(a).

## Argument

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

*See also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

When evaluating whether to issue a stay pending objections to a magistrate judge's order, courts consider "the length of the requested stay, the hardship that [] the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." *In re Mut. Funds Inv. Litig.*, No. 04-MD-15862, 2011 WL 3819608, at *1 (D. Md. Aug. 25, 2011). *See also HSBC Bank USA v. Resh*, No. 3:12-CV-00668, 2014 WL 1513460, at *1 (S.D. W. Va. Apr. 16, 2014) (using these four factors to analyze a party's motion to stay pending a court's review of the party's objections to a magistrate judge's order).[1] Considering these factors, the operation of the Order should be stayed pending a ruling on the City's forthcoming objections.

First, producing the BWC related to 50 incidents is an enormous task for the GPD. The Order specifically described its ruling as a "limited production," that required the

---

[1] Some courts look to other factors, including: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) [where] the public interest lies." *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123, 2009 WL 3245396, at *1 (E.D. Va. Sept. 29, 2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). However, those factors are not always used. Other courts in the Eastern District of Virginia noted that there was a "lack of clarity regarding whether this court is required to apply" the *Hilton* factors "or whether … the court simply has the broad discretion to consider the propriety of a stay based on whatever factors the court deems appropriate." *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix Inc.*, No. 2:09CV555, 2010 WL 11450510, at *3 (E.D. Va. Apr. 22, 2010). Regardless of which factors the Court uses, a stay pending a ruling on the City's objections to the Order is warranted.

City to produce BWC associated with only 50 out of 115 incidents. (D.E. 96 at 17.) However, the Court inadvertently misjudged the impact of the Order. In fact, the majority of the existing BWC from the total 115 incidents would be included in that production. Upon an initial review, the GPD estimates that the 50 incidents that most closely preceded 8 September 2018 that have associated BWC include at least 681 separate BWC videos from 274 officers totaling approximately 176 hours of footage. James Second Decl. ¶ 5. These 50 incidents comprise well over half of the volume and length of data from the 115 incidents. (*See* D.E. 87 at 18.)[2] Chief James explains that the review, preparation, and production of the BWC subject to the GPD's standard procedures, which has already begun and must be completed by the Order's 14 June 2021 deadline, would be extremely burdensome and disruptive to the functions of the GPD and the Professional Standards Division. James Second Decl. ¶¶ 9-10.

Additionally, the Order appears to misapprehend the significant burden it imposes on the City, by concluding that the City's burden would be "largely eliminated" by instructing the GPD to disregard N.C. Gen. Stat. § 132-1.4A(g) when producing the BWC in this matter. That North Carolina statute contains provisions related to the custody and release of BWC. *See* N.C. Gen. Stat. § 132-1.4A. For example, it only authorizes BWC to be released pursuant to an order by a North Carolina superior court judge and requires that notice be provided to various individuals who are seen or heard

---

[2] As the City previously noted, the 115 incidents for which BWC was maintained involved 1,193 separate BWC videos from 504 officers totaling approximately 277 hours of footage. (D.E. 87 at 18.)

5

on the BWC, the head of other law enforcement agencies, and the District Attorney. *See* N.C. Gen. Stat. § 132-1.4A. It further allows the superior court judge to place other conditions or restrictions on release of the BWC. *Id.*

Specifically, the Order concludes that the City "need not comply with the requirements of N.C. Gen. Stat. § 132-1.4A(g) in making productions pursuant to a federal discovery order." (D.E. 96 at 15.) Thus, the Order suggests that "the burdens arising from compliance with N.C. Gen. Stat. § 132-1.4A(g) described in the affidavits of Lt. Bell and Chief James should be largely eliminated." (*Id.* at 16.)

In his Second Declaration, Chief James notes his concerns that the Order would apparently require the City to release BWC without following applicable provisions of N.C. Gen. Stat. § 132-1.4A. James Second Decl. ¶ 6. Regardless of the Order's approach that the GPD does not need to follow all or part of the state law, for important law enforcement purposes, Chief James would direct the GPD to follow its standard practices and procedures regarding the release of BWC as described in his previous declaration. *Id.* ¶ 7. Because release of the BWC may potentially impact other criminal matters or agencies, these standard procedures including having the GPD review the BWC in its entirety, identify, and then notify each law enforcement officer whose image or voice is contained in the recording, the head of that person's law enforcement agency, and the District Attorney. *Id.* Moreover, Chief James would have his employees review the entirety of the BWC for additional sensitive and protected information and make appropriate redactions. *Id.* Therefore, the process of producing this large amount of

6

BWC would be burdensome and disruptive to the functions of the GPD, including its Professional Standards division. *Id.* ¶¶ 9-10.

In its forthcoming objections to the Order, the City will discuss these burdensomeness and proportionality concerns and will also object to the Order's determination as to the BWC's relevancy, noting that Plaintiff's only remaining *Monell* claim is based on a failure-to-train theory and that the Court has previously dismissed a pattern-and-practice theory. (*See* D.E. 58.) As Chief James notes, he has already diverted officers from the Professional Standards Division to begin working on the necessary review required by the Order. James Second Decl. ¶ 10. Obtaining a ruling on the City's objections to the Order before it is required to undertake the burden of producing the BWC from the 50 incidents will promote judicial economy as well as practical and efficient discovery. *See Stone v. Trump*, 356 F. Supp. 3d 505, 518 (D. Md. 2018), *amended on reconsideration*, 402 F. Supp. 3d 153 (D. Md. 2019) (granting a stay of a magistrate judge's ruling pending another circuit's decision); *Weirton Steel Corp. Liquidating Tr. v. Zurich Specialties London, Ltd.*, 2009 WL 357888, at *4 (N.D.W. Va. Feb. 12, 2009) (granting a partial stay of a magistrate judge's order to disclose documents until further report and recommendation from the magistrate judge). Thus, if the Court reverses the Order based on the City's objections, relief from this substantial burden on the City and GPD would be of no avail if the voluminous BWC has already been reviewed and prepared for production.

The short length of the requested stay also weighs in favor of staying the operation of the Order until the Court rules on the City's objections to it. Abiding by the deadlines set in the Local Rules, the City's objection to the Order will be fully briefed and ripe for resolution by the Court no later than 2 June 2021.

Finally, Plaintiff will not be harmed if the stay is granted. If the Court upholds the Order, the result would not affect <u>if</u> Plaintiff receives the BWC, but only <u>when</u> Plaintiff receives the BWC. Plaintiff has not sought this material in discovery with any sense of urgency. The City responded to Plaintiff's requests for production on 19 August 2020. (D.E. 85-2.) It was not until three months later, on 20 November 2020, that Plaintiff requested, for the first time, the BWC of other incidents involving the use of a hobble. (D.E. 85-4.) Even after that, Plaintiff did not move to compel the BWC until 15 January 2021. (D.E. 85.) Thus, any prejudice to Plaintiff from a short further delay is due to timing that was determined in significant part by Plaintiff.

## Conclusion

For the reasons set forth herein, and in the motion and the Second Declaration of Chief James, the City respectfully requests that the Court stay the operation of the Order pending the filing and determination of objections to it.

This the 6th day of May, 2021.

/s/ Alan W. Duncan
Alan W. Duncan (NCSB No. 8736)
Stephen M. Russell, Jr. (NCSB No. 35552)
Hillary M. Kies (NCSB No. 46176)
MULLINS DUNCAN HARRELL
   & RUSSELL PLLC

8

300 N. Greene St., Suite 2000
Greensboro, NC 27401
aduncan@mullinsduncan.com
srussell@mullinsduncan.com
hkies@mullinsduncan.com

*Counsel for Defendants City of Greensboro, Payne, Duncan, Montalvo, Lewis, Bradshaw, Andrews, Strader, and Bailey*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned hereby certifies that the foregoing document complies with Local Rule 7.3(d)'s limitation of no more than 6,250 words (excluding captions, signature lines, certificate of service and any cover page or index) as counted by word processing software.

This the 6th day of May, 2021.

                                            /s/ Alan W. Duncan
                                            Alan W. Duncan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of Court through the CM/ECF system, which will send notice of filing to counsel of record.

This the 6th day of May, 2021.

/s/ Alan W. Duncan
Alan W. Duncan