# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY SMITH, as Administrator )
of the ESTATE OF MARCUS )
DEON SMITH, deceased, )
                               )
            Plaintiff, )
                               )           1:19CV386
          v. )
                               )
CITY OF GREENSBORO, et al., )
                               )
         Defendants. )

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISRATE JUDGE

This matter is before the Court upon four motions: (1) Plaintiff's motion to amend the complaint or alternatively for reconsideration of the Court's March 25, 2020 Order (Docket Entry 155), (2) Plaintiff's motion to reopen discovery for limited purposes (Docket Entry 146), (3) Plaintiff's motion to unseal exhibits 1, 2 and 3 to her brief in support of her motion to reopen discovery (Docket Entry 153), and (4) Defendants' motion to exclude Plaintiff's rebuttal expert report of Trevonne M. Thompson, MD (Docket Entry 137). All four matters are ripe for disposition. For the following reasons, the undersigned will recommend denying Plaintiff's motion to amend the complaint or alternatively for reconsideration of the Court's March 25, 2020 Order, will deny Plaintiff's motion to reopen discovery, will deny Plaintiff's motion to unseal, and will deny Defendants' motion to exclude.

# I. BACKGROUND

Plaintiff initiated this action on April 10, 2019, following the September 8, 2018, death of her son Marcus Deon Smith ("Mr. Smith") while in the custody of the Greensboro Police Department ("GPD"). (*See generally* Complaint ("Compl."), Docket Entry 1.) Plaintiff's complaint named as Defendants eight Greensboro Police Department Officers ("GPD Officers"), two Guilford County Emergency Medical Providers, the City of Greensboro, and Guilford County. (*Id.*) Plaintiff alleged violations of the Fourth and Fourteenth Amendments of the United States Constitution and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–34, in addition to raising North Carolina state law claims for wrongful death and battery. (*Id.* ¶¶ 68–104.) Plaintiff alleges that Mr. Smith was restrained with unreasonable and excessive force by the GPD Officers using a "RIPP Hobble" device. (*Id.* ¶¶ 1-2, 31-49.) Plaintiff further alleges the policies, practices, and customs of Defendant City of Greensboro regarding the use of the RIPP Hobble device contributed to Mr. Smith's death. (*Id.* ¶¶ 3, 57-65.)

All Defendants moved to dismiss Plaintiff's claims against them. (*See* Docket Entries 17, 20, 22, 25.) The Court granted Defendant Guilford County's motion to dismiss in full. (*See* Docket Entry 58 at 44.) As to all other Defendants, the Court granted in part and denied in part their motions to dismiss. (*Id.*) Plaintiff's remaining claim against Defendant City of Greensboro is her § 1983 *Monell* failure to train claim. (*Id.* at 24-27 (referencing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).) Additionally, Plaintiff's remaining claims against the GPD Officer Defendants are for excessive force in violation of the United States Constitution

2

and wrongful death pursuant to North Carolina state law. (*Id.* at 9-20.) For the sake of clarity, the undersigned will discuss the procedural history related to each motion below.

## II. DISCUSSION

### A. Plaintiff's motion to amend the complaint or alternatively for reconsideration

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff moves to amend her complaint to "to re-plead her widespread custom or practice theory of *Monell* municipal liability." (Docket Entry 155 at 1.) In the alternative, Plaintiff asks the Court to reconsider the portion of its March 25, 2020 Order dismissing Plaintiff's widespread practice theory pursuant to Federal Rule of Civil Procedure 54(b). (*Id.*) Plaintiff contends that the basis for this motion is "newly discovered evidence not previously available," namely, the body worn camera ("BWC") footage produced by Defendants on July 16, 2021, pursuant to the Court's ruling on her motion to compel. (*Id.* at 1, 7-10.)

Plaintiff filed her initial complaint on April 10, 2019, raising a *Monell* municipal liability claim against the City of Greensboro. (*See* Compl. ¶¶ 82-84.) *Monell* municipal liability may arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)) (quotations omitted). The City of Greensboro moved to dismiss the claim against it, arguing that the complaint failed to allege municipal liability under any of these

Case 1:19-cv-00386-LCB-JLW    Document 201    Filed 10/18/21    Page 3 of 29

theories. (*See* Docket Entry 23 at 7-17.) Relevant to the foregoing motion to amend, the Court granted the City's motion to dismiss as to Plaintiff's widespread custom or practice theory, finding Plaintiff's allegations "too generalized and disconnected from the violation at issue." (*See* Docket Entry 58 at 27-28.)

The Court's initial pretrial scheduling order set September 2, 2020 as the deadline for the parties to amend their pleadings or join additional parties. (Docket Entry 75 at 5.) The scheduling order specifically indicated that if motions to join parties or amend pleadings were filed after that date, the Court would consider "whether the granting of leave would delay trial." (*Id.*) In August of 2020, Defendants produced 2,162 pages of police incident reports for incidents where RIPP Hobble devices were used between 2014 and 2018. (Docket Entry 163 at 3.) Defendants produced a second batch of 352 pages of police incident reports in December of 2020. (*Id.*) After a series of discovery disputes regarding BWC footage of incidents where GPD Officers used RIPP Hobble devices, Plaintiff received the BWC footage on July 20, 2021. (Docket Entry 155 at 7.) Plaintiff did not seek an extension of the deadline to amend, but filed the instant motion to amend on August 6, 2021, nearly a year after the deadline for amendments had passed. (*See id.*) Defendants responded in opposition to Plaintiff's motion. (Docket Entries 163, 164.) Plaintiff then filed a reply. (Docket Entry 180.)

Here, Plaintiff's motion for leave to amend her complaint was filed after the deadline for amendments had passed, therefore she must meet two requirements for the Court to grant her motion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). First, Plaintiff must make a showing of good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b*). Belcher v. W.C. English Inc.*, 125 F. Supp. 3d 544, 548 (M.D.N.C. 2015);

*see also Nourison Rug Corp.*, 535 F.3d. at 298. Second, even if Plaintiff meets the more rigorous good cause standard, she can only amend the pleadings if the Court grants her leave to amend or by consent under Federal Rule of Civil Procedure 15(a). *DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004).

A court may find good cause where a plaintiff exercising reasonable diligence would not have discovered the evidence supporting the proposed amendment until after the amendment deadline. *Belcher*, 125 F. Supp. 3d at 549. In assessing good cause, the Court "focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty, Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631-32 (D. Md. 2003)). There is no good cause when the movant "has not acted diligently in compliance with the schedule." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (internal citation and quotation omitted).

The undersigned has determined that Plaintiff has not shown good cause to amend the scheduling order at such a late date. First, there is no good cause to modify the scheduling order because most of the factual allegations that Plaintiff seeks to add to her complaint were made available to her in police incident reports produced in 2020, the bulk of which were produced before the September 7, 2020 deadline to amend pleadings. The police incident reports made available to Plaintiff in August and December of 2020 detailed information about GPD Officers' use of the RIPP Hobble device, including each detained person's age, race, and sex, and whether the person being detained was injured during the incident. Plaintiff uses this data to support her proposed new claim that GPD Officers "subject[ed] people to

5

unconstitutional and racially and sexually discriminatory hogtying . . . ." (Docket Entry 155-1 at 11.) Plaintiff asserts that she could not amend her complaint without having viewed the recently discovered BWC footage to determine how GPD Officers used the RIPP Hobble device, yet many of her factual allegations in her proposed amended complaint do not reference how the GPD Officers used the RIPP Hobble. While the BWC footage may *help* support Plaintiff's proposed new claim, Plaintiff had access to other facts she uses to support this claim in August of 2020, and a diligent plaintiff would have used these facts to seek to amend her complaint within the deadline provided by the scheduling order.

Second, there is no good cause to modify the scheduling order because Plaintiff waited until the eleventh hour to seek leave to do so. While Plaintiff argues she has acted diligently in compliance with the scheduling order, she waited eleven months after the scheduling order deadline to request leave to amend her complaint. Even if Plaintiff believed she would need to use factual allegations from the BWC footage to bring her new theory, a diligent plaintiff would have moved the Court to timely amend the scheduling order to extend her amendment deadline. *See Cook*, 484 F. App'x at 815-16 (finding no good cause where appellants knew sufficient discovery could not be completed by the scheduled deadline to amend and made no attempt to timely amend the deadline). Thus, Plaintiff has not demonstrated good cause to modify the scheduling order in this matter.

Furthermore, assuming *arguendo* Plaintiff had good cause to modify the scheduling order, this Court recommends denying Plaintiff's motion because her proposed amended complaint would prejudice Defendants. After the Court determines that a movant has satisfied Rule 16(b), the Court engages in a Rule 15(a) analysis, which provides that leave to

amend should be "freely given when justice so requires." *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (quoting Fed. R. Civ. P. 15(a)). While the Fourth Circuit liberally allows amendments, "a court may deny leave to amend if the amendment is prejudicial to the opposing party, the moving party has acted in bad faith, or amendment would be futile." *Sciacca v. Durham Cnty. Bd. of Educ.*, 509 F. Supp. 3d 505, 515 (M.D.N.C. 2020).

Defendants argue Plaintiff's amendment would be prejudicial because the motion to amend is untimely and would lead to the reopening of discovery.[1] (Docket Entries 163 at 11-12; 164 at 8-9.) In determining whether an amendment is prejudicial to the opposing party, the Court evaluates the nature and the timing of the amendment. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An example of a prejudicial amendment is "one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Cross Creek Seed, Inc. v. Gold Leaf Seed Co.*, No. 1:16CV1432, 2017 WL 10765270, at *2 (M.D.N.C. Sept. 26, 2017) (citing *Laber*, 438 F.3d at 427 (alteration in original)). While delay alone is insufficient to deny a motion to amend, courts are more likely to find proposed amendments prejudicial to opposing parties in cases that have progressed closer towards judgment. *Laber*, 438 F.3d at 427.

In the instant matter, Plaintiff's amendment, if granted, would prejudice defendants due to both the nature and the timing of the amendment. First, Plaintiff's proposed amendment raises a new legal theory of recovery under *Monell*. Plaintiff argues her new *Monell* theory is just the revival of her previously dismissed widespread custom or practice theory

---

[1] Defendants also argue that the motion does not satisfy the good faith requirement and the amendment would be futile. (*See* Docket Entries 163, 164.) Because prejudice alone is dispositive, this order does not address bad faith or futility.

supported by new facts. (Docket Entry 155 at 14.) This is not persuasive as Plaintiff's previously dismissed theory was predicated on "nebulous" allegations of "a long history of racist police violence and misconduct." (*See* Docket Entry 58 at 27-28.) In contrast, her proposed theory is based primarily on the allegedly "racially and sexually discriminatory [use of] hogtying" by the Greensboro Police Department from 2014 to 2018. (*See* Docket Entry 155-1 at 11, 14.) While Plaintiff's complaint does contain a *Monell* claim under the failure to train theory, Plaintiff's proposed *Monell* widespread custom or practice theory would greatly extend the potentially relevant facts. This is evident as Plaintiff has added three pages of new factual allegations against Defendants in her proposed amended complaint and seeks to reopen expansive discovery in conjunction with this new legal theory. (*See id.*) If granted, this amendment would require Defendants to gather and analyze new facts. (Docket Entry 147 at 1-2.)

Additionally, the timing of the motion for leave to amend weighs against Plaintiff. Plaintiff offered her proposed amendment after the conclusion of discovery and one month before the deadline for dispositive motions. (*See* Text Order dated 07/15/2021.) *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603-04 (4th Cir. 2010) (upholding a proposed amendment as unduly prejudicial because the plaintiff introduced a new claim that would require the court to reopen discovery on the eve of the dispositive motions deadline). Thus, the motion to amend would be prejudicial to Defendants. For these reasons, the Court recommends denial of Plaintiff's motion for leave to amend her complaint.

In the alternative, Plaintiff seeks an interlocutory reconsideration of her previously dismissed *Monell* widespread custom or practice theory under Federal Rule of Civil Procedure

54(b), claiming that the newly discovered BWC footage permits reconsideration. (Docket Entry 155 at 15-16.) Defendants oppose this motion for reconsideration, asserting it is the wrong mechanism for Plaintiff because she seeks to assert a new, differently pleaded claim than alleged in her original complaint. (Docket Entries 163 at 22; 164 at 12.)

Prior to a final judgment, the district court retains the authority to "reconsider and modify its interlocutory judgments" as justice requires. *Garey v. Farrin*, No. 1:16CV542, 2021 WL 1124286, at *2 (M.D.N.C. Mar. 24, 2021). "Motions for reconsideration are generally disfavored." *United States v. Curry*, 1:05CR282-1, 2021 WL 2644298, at *2 (M.D.N.C. June 25, 2021). Reconsideration is permitted "(1) to account for an intervening change in controlling law; (2) to account for newly discovered evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Garey*, 2021 WL 1124286, at *2 (quoting *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017). Reconsideration is not permitted to bring a new legal theory before the court that the movant could have addressed originally. *Pacific Ins. Co. v. American Ant. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Martin v. Bimbo Foods Bakeries Distrib., LLC*, No. 5:14-CV-17-BR, 2015 WL 3605695, at *1 (E.D.N.C. June 8, 2015) ("Generally, a party should not use a motion for reconsideration to raise new arguments.") (citation omitted)).

The undersigned concludes that Plaintiff's motion for reconsideration should be denied because it does not rely on newly discovered evidence and because she raises a new legal theory in her motion. As discussed herein, Plaintiff's argument that she needed the recently obtained BWC footage to bring her *Monell* widespread custom or practice theory falls short. Further, Plaintiff's motion for reconsideration should be denied because it introduces

9

a new legal theory. While Plaintiff's brief argues that her *Monell* widespread custom or practice theory in her proposed amended complaint is the same legal theory she made in her original complaint (Docket Entry 155 at 14), this Court is not convinced. Plaintiff's original *Monell* widespread custom or practice theory alleged

> Greensboro and its Police Department have a long history of racist police violence and misconduct . . . including . . . the targeting of African-Americans for . . . driving while black and being downtown while black, and the accompanying use of force, violence, false charges, perjury, and cover up by superiors . . . .

(Compl. ¶ 63.) As noted in the March 25, 2020 Order, this claim "fail[ed] to draw a connection between those allegations and a widespread practice of using restraints in an excessive or gratuitous way." (Docket Entry 58 at 27.) Now, Plaintiff seeks a second bite at the apple by alleging an entirely new *Monell* widespread custom or practice theory—that the Greensboro Police Department engaged in "unconstitutional and racially and sexually discriminatory hogtying . . ." during a four year period. (*See* Docket Entry 155-1 at 12.) In her reply brief, Plaintiff herself concedes this is a new theory. (Docket Entry 180 at 8.) Plaintiff's newly presented theory is so distinguishable from her originally pled claim that reconsideration is not appropriate. For these reasons, to the extent Plaintiff seeks reconsideration of her widespread pattern and practice claim, this too should be denied.

## B. Plaintiff's Motion to reopen discovery

According to the Court's initial scheduling order and subsequent modifications thereto, the deadline for the completion of all discovery in this case was July 2, 2021. (*See* Docket Entry 75; Text Orders dated 12/21/2020 and 04/08/2021.) Prior to the close of discovery, Plaintiff filed a motion to compel the production of BWC footage of prior incidents in which

the RIPP Hobble had been deployed by members of the GPD. (*See* Docket Entries 84, 85.)

On April 28, 2021, the undersigned ordered Defendant City of Greensboro to produce BWC footage corresponding to fifty such incidents within forty-five days. (*See* Docket Entries 96.) Pursuant to subsequent Orders, the production deadline for these videos was extended until July 16, 2021 (two weeks after the close of discovery). (*See* Docket Entries 110, 135.)

On August 2, 2021, Plaintiff filed the foregoing motion seeking to reopen discovery for the limited purpose of

> production of BWC footage of 28 additional incidents involving the Officer Defendants, production of BWC footage of any and all hogtying incidents from September 8, 2018 until the GPD discontinued hogtying on November 30, 2018, and deposing or re-deposing certain selected Defendants and other designated material witnesses on the hogtying incidents captured on the BWC videos.

(Docket Entry 147 at 2.) Defendants responded in opposition, arguing that Plaintiff's motion was untimely, and that Plaintiff does not meet the excusable neglect or exceptional good cause standards that would allow for the late filing of such a motion. (*See generally* Docket Entry 159 at 12.) Plaintiff has filed a reply. (Docket Entry 177.)

This Court's Local Rules specifically provide that

> [m]otions seeking an extension of the discovery period or permission to take more discovery than is permitted under the initial pretrial order must be made or presented prior to the expiration of the time within which discovery is required to be completed . . . . The Court will permit additional depositions only on a showing of exceptional good cause.

LR26.1(d). Here, Plaintiff filed her motion to reopen discovery one month after the discovery deadline. Because Plaintiff's motion is untimely, she must satisfy the excusable neglect

11

standard imposed by Federal Rule of Civil Procedure 6.[2]  *See Elsayed v. Fam. Fare LLC,* No.

1:18CV1045, 2019 WL 6329447, at *2 (M.D.N.C. Nov. 26, 2019) (quoting Fed. R. Civ. P.

6(b)(1) ("When an act may or must be done within a specified time, the court may, for good

cause, extend the time . . . on motion made after the time has expired if the party failed to act

because of excusable neglect.")).

> Whether neglect is 'excusable' has been described by the Supreme
> Court as 'at bottom an equitable [inquiry], taking account of all
> relevant circumstances,' including the following: (1) the danger
> of prejudice to the non-movant; (2) the length of the delay and
> its potential impact on judicial proceedings; (3) the reason for the
> delay, including whether it was in the reasonable control of the
> movant; and (4) whether the movant acted in good faith.

*Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (citing *Pioneer Inv. Servs. Co. v. Brunswick*

*Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)).  "'Excusable neglect' is not easily demonstrated

. . . ." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996).

In assessing these four factors, the undersigned finds that Plaintiff has not shown

excusable neglect as required for her untimely request to extend the discovery period.  First,

reopening discovery for the purposes Plaintiff has outlined will cause significant prejudice to

Defendant City of Greensboro.  While Plaintiff characterizes the scope of the discovery she

seeks as "limited," she states that she seeks the re-depositions of seven Defendant GPD

Officers, in addition to the depositions of an unspecified number of non-defendant officers

and the re-deposition of an unspecified number of Greensboro policymaking officials.  (*See*

---

[2] Plaintiff argues that she must only satisfy the good cause standard of Federal Rule of Civil
Procedure 16(b)(4) to extend the discovery period.  (*See* Docket Entry 147 at 11-12.)  However, the
good cause standard applies only where a party makes a *timely* motion to modify the scheduling order.
*See Elsayed,* 2019 WL 6329447, at *2 n.1.

Docket Entry 147 at 13.) Further, Plaintiff seeks BWC footage from 28 additional incidents. (*Id.* at 2.) This expansive plan for additional discovery would be prejudicial to Defendant City of Greensboro and GPD Officer Defendants, causing delay and expense for those defendants. *See Elsayed*, 2019 WL 6329447, at *2 (finding no excusable neglect in part because the movant's motion to reopen discovery included additional depositions that would prejudice the non-movant by causing additional delay and expense).

Second, the reopening of discovery will undoubtedly delay this case's progress towards resolution. Plaintiff filed her motion to reopen discovery just one month before the deadline for dispositive motions. (*See* Text Order dated 07/15/2021.) Based on representations made by GPD Chief of Police Brian L. James in support of prior briefings, the production of the BWC footage Plaintiff seeks will require several weeks at minimum. (*See, e.g.,* Docket Entries 99, 117.) In addition, the numerous depositions of officers and other witnesses Plaintiff hopes to conduct will require significant time and expense by both parties, especially considering that Defendants have already filed dispositive motions.

Third, Plaintiff's reason for delay weighs against her motion to reopen discovery. As to the reason for the delay in seeking to reopen discovery, Plaintiff indicates that "key evidence was . . . produced more than two weeks after discovery had already closed." (Docket Entry 147 at 13.) Plaintiff contends she could not have known that she would need to reopen discovery until after she watched the BWC footage. (Docket Entry 177 at 1-2.) Defendants argue that Plaintiff should have asked for additional discovery as soon as "it was apparent the BWC production would not occur until near or after the close of discovery." (Docket Entry 159 at 15.)

13

As discussed herein, while Plaintiff did not receive the BWC footage until after the close of discovery, as early as August 2020 Plaintiff had access to police incident reports regarding Defendant GPD Officer and non-defendant officer use of the RIPP Hobble device, the same incidents captured on the BWC footage. Even if the Court did find Plaintiff's argument to be persuasive, by May of 2021 Plaintiff knew she would not receive the BWC footage until after the close of discovery. (*See* Docket Entry 110.) Plaintiff has not provided a specific reason for the delay in seeking to extend the discovery deadline, only making the general claim that she "did not know and could not have known whether follow-up discovery would be needed until after receiving and reviewing [the BWC footage] . . . ." (Docket Entry 177 at 1.) Under these circumstances, Plaintiff should have made a timely request to extend discovery in May of 2021 rather than waiting until after the close of discovery to file this motion with the Court.

Finally, while the Court does not find that Plaintiff has acted in bad faith in filing the foregoing motion, the other factors weigh strongly against a finding of excusable neglect. Therefore, the Court will deny Plaintiff's motion.

### C. Plaintiff's Motion to Unseal Exhibits 1, 2 and 3 to her Brief in Support of her Motion to Reopen Discovery

Plaintiff moves to unseal Exhibits 1, 2, and 3 (the "Exhibits") to her brief in support of her motion to reopen discovery. (Docket Entry 153.) On July 16, 2020, this Court issued a Protective Order requiring Confidential material filed with the Court as part of any motion to be filed under seal pursuant to Local Rule 5.4 with additional agreed-upon procedures.

14

(Docket Entry 79 at 12-13.)[3]  On August 2, 2021, Plaintiff filed a motion seeking to reopen discovery.  (Docket Entry 146.)  Plaintiff attached the Exhibits to her brief in support of her motion.  (*See* Docket Entry 147.)  Exhibit 1 contains Plaintiff-drafted summaries[4] of the produced BWC footage associated with 12 incidents involving GPD Officer Defendants where the RIPP Hobble device was used.  (Docket Entry 154 at 1.)  Exhibit 2 contains Plaintiff-drafted summaries of the produced BWC footage associated with 38 incidents involving non-defendant officers where the RIPP Hobble device was used. (*Id.*)  Exhibit 3 is hard drive containing all the produced BWC footage of incidents where Defendants and non-defendant officers used the RIPP Hobble device.  (*Id.* at 2.)  Plaintiff filed all the Exhibits under seal (*See* Docket Entries 148, 149, 147-3[5]), but did not file a motion to seal the Exhibits. Instead, Plaintiff filed the instant motion to *unseal* the Exhibits.

In the pending motion, Plaintiff contends that Exhibits 1 and 2 are not confidential as defined in the Protective Order and should be publicly filed on the docket, despite filing the Exhibits under seal.  (Docket Entry 154 at 2.)  Plaintiff further argues that Exhibit 3 should be redacted and unsealed to protect "the public's right of access to these videos, which are of great public interest."  (*Id.*)  Defendants have filed responses to Plaintiff's motion to unseal. (*See* Docket Entries 161, 162.)  Plaintiff has filed a reply.  (*See* Docket Entry 179.)

---

[3] While Defendants jointly moved for entry of the Protective Order, Plaintiff consented to the request.  (*See* Docket Entry 77.)

[4] Plaintiff refers to Exhibits 1 and 2 as "summaries" in her brief.  (*See* Docket Entry 147.)  For clarity, this Court will use the term summaries to describe these documents but does not make any determinations as to the accuracy of these summaries.

[5] The Court received a physical copy of Exhibit 3 in hard-drive form.

15

As a preliminary matter, this Court notes that while Plaintiff's motion seeks to unseal Exhibits 1, 2, and 3, she has not motioned the Court to seal these documents. Paragraph 19 of the Protective Order requires that confidential documents filed with the Court shall be filed pursuant to Local Rule 5.4. (Docket Entry 79 at 12.) Local Rule 5.4(c)(2) requires the party filing documents under seal to "file a motion to seal on the public docket containing a non-confidential description of what is to be sealed." According to Local Rule 5.4(c)(3),

> No motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support, including affidavits or declarations, and with citation to any supporting statutes, case law, or other authority. If confidential information needs to be discussed or provided to make this showing, a sealed supplement to the motion to seal may be filed separately. This showing also must address the length of time for which sealing is sought. Failure to file LR 5.4(c)(3) supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice.

Where the party claiming confidentiality is not the filing party, "the filing party should so note, and the party claiming confidentiality must file a response within 14 days of the motion to seal that includes the materials required by LR5.4(c)(3)." LR5.4(c)(4)(b). The party filing the motion to seal must also submit a LR5.4(d) Checklist and Summary Chart to the Court. LR5.4(c)(6).

Here, Plaintiff did not file a motion to seal the Exhibits to her motion to reopen discovery but did publicly provide a non-confidential description of the Exhibits in her brief and filed the Exhibits under seal. (*See* Docket Entries 147, 148, 149.)[6] While Defendants did

---

[6] While the BWC footage does not appear on the docket, Plaintiff filed a hard drive purportedly containing the BWC footage with the Clerk of Court. (Docket Entry 179 at 9.)

not have an opportunity to respond to a motion to seal, Defendants' responses to Plaintiff's instant motion addresses the primary considerations as required by Local Rule 5.4(c)(3). (*See* Docket Entries 161, 162.) However, no party filed a Checklist and Summary Chart as required by Local Rule 4.5(c)(6) and no motion to seal was publicly docketed.

Despite Plaintiff's failure to adhere to Local Rule 5.4, this Court has the authority to evaluate whether or not these documents should be sealed "to avoid potentially unsealing any documents which have a legitimate reason to be sealed . . . ." *Burroughs v. Page*, No. 1:17CV463, 2019 WL 5558453, at *3 (M.D.N.C. Oct. 28, 2019) (evaluating a motion to seal on the merits and granting the motion in part, even where the motion was deficient). Here, the Court will consider the motion to unseal and response as a motion to seal and response for procedural purposes. In doing so, the Court must

> give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004).

Here, the motion to unseal has been publicly available on the docket since August 5, 2021, providing the public with notice that the Exhibits may be subject to seal and providing a reasonable opportunity to challenge the request. Plaintiff's motion to unseal and Defendants' responses have also given the Court an opportunity to consider less drastic alternatives to sealing and to state the reasons for its decision to seal the documents. Therefore, the Court will evaluate herein whether the Exhibits should be sealed and whether there are alternatives to sealing.

17

Initially, the Court must determine whether Exhibits 1 and 2 are confidential documents subject to the Protective Order. Indeed, upon objection, the Protective Order provides for the Court's review of a determination regarding the appropriateness of a "confidential" designation. (*See* Docket Entry 79 at 7 ("If a resolution [between the parties] cannot be reached, any party may file a motion with the Court requesting that it determine whether the designation is appropriate.").) Plaintiff initially labeled Exhibits 1 and 2 as confidential and filed them under seal because the content in Exhibits 1 and 2 is derived from the confidential BWC footage. Plaintiff now argues that Exhibits 1 and 2 are not confidential because the summaries do not contain any names or personal identifying information of non-parties. (Docket Entry 154 at 5.) The Protective Order states that "material that Defendants assert could qualify as 'Highly Confidential' includes, without limitation, personnel records, criminal investigative information regarding non-parties, medical records, and body-worn camera footage . . . ." (Docket Entry 79 at 4.) The Protective Order further provides that "[a]ny summary, compilation, notes, or copy containing Confidential Information . . . shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, [or] copy . . . is derived." (*Id.* at 8.)

Here, Exhibits 1 and 2 are Highly Confidential as designated in the Protective Order. Exhibits 1 and 2 contain information that summarizes the content of Highly Confidential BWC footage. (*See id.* at 4 ("'Highly Confidential' includes, without limitation, . . . body-worn camera footage . . . .").) While Plaintiff has redacted most of the personal identifying information in creating the summaries, they are still derived from the BWC footage and thus subject to the Protective Order. Further, Exhibits 1 and 2, contain criminal investigative

18

information regarding non-parties, which also makes the exhibits Highly Confidential and subject to the Protective Order. Thus, to the extent Plaintiff is challenging the confidential designation of Exhibits 1 and 2, her argument fails.

Additionally, the Court must determine if the Exhibits as attached to Plaintiff's motion to reopen discovery are judicial records subject to the common-law right of access. The Fourth Circuit has not definitively stated whether a document filed with the Court as an attachment to a discovery motion is subject to the common-law right of access. *See Garey*, 2020 WL 5211851, at *6. A document does not become a judicial record merely because it is filed with a court. *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995). Rather, a document filed with the court becomes a judicial record when it "play[s] a role in the adjudicative process[] or adjudicate[s] substantive rights." *Garey*, 2020 WL 5211851, at *5 (quoting *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)). This Court has held that a public right of access does not generally attach to discovery motions or documents filed with discovery motions. *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV918, 2010 WL 1418312, at *9-10 (M.D.N.C. Apr. 2, 2010)).

Where no public right of access applies, the Court determines whether there is good cause to keep documents under seal. *Hatch v. Demayo*, No 1:16CV925, 2020 WL 6161533, at *6 (M.D.N.C. Oct. 21, 2020). Civil Rule of Federal Procedure 26(c) provides that the Court may seal documents for good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Here, there is good cause to seal the Exhibits and no reasonable alternative to sealing—like blurring faces or muting names— is appropriate.

19

First, the BWC footage contains personal identifying information that could cause great embarrassment and oppression to the people being restrained in the BWC footage. Plaintiff suggests that blurring the faces and muting the names of the people in the BWC footage would remedy this. (Docket Entry 154 at 7.) As Defendants accurately point out, there are countless other identifying characteristics that would be apparent from the videos, including hairstyle, clothing, voice, or video footage of the interior or exterior of a residence or vehicle. (Docket Entry 161 at 13.) This is exactly the type of content this Court intended to keep under seal when issuing the Protective Order. (*See* Docket Entry 79.) Exhibits 1 and 2 also contain some identifying information, including the names of two people being detained in BWC footage.[7] This too weighs in favor of sealing Exhibits 1 and 2.

Second, sealing the Exhibits would protect the Defendants from undue burden. Plaintiff proposes that Defendants, as the producing party, should be responsible for redacting the BWC footage in Exhibit 3 by blurring the faces and muting the names of the people observed in the videos. (Docket Entry 179 at 9.) As Defendants note, the BWC footage consists of 230 recordings and over 176 hours of footage. (Docket Entry 161 at 4.) The tedious process of redacting 176 hours of BWC footage would be time consuming and costly, unduly burdening Defendants. Further, publicizing Exhibits 1 and 2 would burden Defendants because the videos are based on Plaintiff's one-sided perspective of the content in the BWC footage that is subject to seal. As Defendants note, this case has been widely

---

[7] Plaintiff notes in her reply brief that the disclosure of these names in the Exhibits was inadvertent and that she would remove these names if Exhibits 1 and 2 were to be unsealed. (Docket Entry 179 at 7 n.4.) This accidental disclosure further illustrates the sensitive nature of the content in the BWC footage and the possibility that Plaintiff's summaries may contain other information that could be used to identify the non-parties depicted in the BWC footage.

20

covered in the press. (Docket Entry 162 at 9.) If this Court were to publicize Exhibits 1 and 2, this would unduly burden Defendants by allowing Plaintiff to inevitably control the public narrative regarding the content of the BWC footage and would force Defendants to determine when and how to publicly address the extensive claims Plaintiff makes in her summaries. The parties should focus their energy on resolving this case through the court system, not in the court of public opinion. *See United States v. Lindh*, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002) (noting parties have an obligation to avoid using the media "to influence public opinion . . . to gain an advantage at trial"). Thus, there is good cause to seal the Exhibits because publicizing them would cause embarrassment to the third parties in the BWC footage and would unduly burden Defendants.

In the alternative, to the extent that Exhibits 1, 2, and 3 may qualify as judicial records, the common law right of public access applies. *See Hatch*, 2020 WL 6161533, at *13. A party may overcome this presumption of access if the Court determines that "competing interests outweigh the interest in access." *Garey*, 2020 WL 5211851, at *6. In considering competing interests, the Court evaluates the following factors: "whether the records are sought for improper purposes, such as promoting public scandals . . . whether the release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

On its face, Plaintiff's motion seemingly seeks to make the Exhibits public for nothing more than the improper purpose of promoting a public scandal. In her brief, Plaintiff does not provide any reason as to why she wants to unseal the exhibits except to say that there is a

21

"greater public interest in understanding how the Greensboro Police Department treats its citizens . . . ." (Docket Entry 179 at 1.) As Defendants note, Plaintiff spoke with the press shortly after filing her motion to reopen discovery and appears to have attached the Exhibits to her motion for the purpose of providing the press access to the Exhibits. (*See* Docket Entry 161 at 16.)

"The court has the power to insure that its records are not used to 'promote public scandal[.]'" *In re Knight Pub. Co.*, 743 F.2d at 236; *see also Nixon v. Warner Com.*, 435 U.S. 589, 603 (1978) (determining publicizing a document is not appropriate where "the court could become a partner in the use of the subpoenaed material 'to gratify private spite or promote public scandal' . . . with no corresponding assurance of public benefit"). Exhibits 1 and 2 especially promote public scandal as they only feature Plaintiff's perspective as to the content of the BWC footage. Further, there is no assurance of any public benefit if Exhibits 1 and 2 are publicized, as they do not present an objective or balanced depiction of the BWC footage's content. Any alternative to sealing these summaries would result in the same promotion of scandal. Likewise, publicizing Exhibit 3 would promote public scandal as it shows hundreds of recordings of non-parties being physically restrained with a RIPP Hobble device (*see* Docket Entries 161 at 10; 179 at 8-9 n.6) related to an incident that has already been featured prominently in the media. (Docket Entry 162 at 9.) Thus, the first factor weighs in favor of sealing the Exhibits.

In addition, publicizing the Exhibits would not enhance the public's understanding of an important historical event. Defendants argue that because the BWC footage does not depict the deceased and involves circumstances different from the deceased's, Exhibit 3 would

22

not enhance the public's understanding of what happened to the deceased. (Docket Entry 161 at 17-18.) This Court agrees. BWC Footage that depicts the use of the RIPP Hobble on non-parties would not enhance the public's understanding about the deceased's interaction with the GPD Officers because the public already has access to the BWC footage of GPD Officers using the RIPP Hobble device on the deceased. (*Id.* at 16-17.) Likewise, Plaintiff's summaries of the BWC footage are subjective, one-sided accounts of similar incidents involving non-parties and do not enhance the public's understanding of what happened to the deceased. Thus, this factor weighs in favor of sealing the Exhibits.

Lastly, the Court considers whether the public has already had access to the information contained in the records. Because the Exhibits have been subject to the Protective Order and have only been in the custody of parties to this litigation, the public has not had access to the information contained in the Exhibits. This factor weighs in favor of sealing the Exhibits. Ultimately, all three factors weigh against publicizing the Exhibits. For these reasons, even to the extent that the common law right of public access applies, competing interests require the Court to seal the Exhibits.[8]

Therefore, the Court denies Plaintiff's motion to unseal Exhibits 1, 2, and 3 to her brief in support of her motion to reopen discovery and orders the Exhibits to remain sealed.

---

[8] Plaintiff also filed the summaries in Exhibits 1 and 2 as sealed exhibits to her motion to amend. (*See* Docket Entries 155, 156.) Plaintiff did not motion the Court to seal these exhibits. Because these exhibits are the same summaries found in Exhibits 1 and 2, the Court will order the exhibits to remain sealed for the reasons provided herein.

**D. Defendant's Motion to Exclude Plaintiff's Rebuttal Expert Report from the Docket**

Finally, the undersigned considers Defendants' joint motion to exclude Plaintiff's rebuttal expert report from the docket. (Docket Entry 137.) The parties came before the Court for a pretrial conference on June 17, 2020 to discuss potential scheduling order terms. (*See* Minute Entry dated 06/17/2020.) Following the conference, the Court entered an initial scheduling order, which set the dates for the disclosure of expert reports by each party and allowed for supplementations of such reports pursuant to Federal Rule of Civil Procedure 26(e). (Docket Entry 75 at 4-5.) Pursuant to extensions granted by the Court, the final deadline for service of Plaintiff's expert reports was March 22, 2021, and the final deadline for service of Defendants' expert reports was May 20, 2021. (*See* Text Orders dated 03/17/2021 and 04/08/2021.) The deadline for supplementations was June 2, 2021. (*See* Text Order dated 04/08/2021.) The Court's initial scheduling order and subsequent modifications thereto are silent as to expert rebuttal disclosures. (*See* Docket Entry 75; Text Orders dated 12/21/2020, 03/17/2021 and 04/08/2021.)

In accordance with the scheduling orders described above, Plaintiff served the retained expert report of pathologist Dr. Kris Sperry on March 22, 2021. (*See* Docket Entry 138 at 2.) Defendants served the retained expert report of toxicologist Cathy Vaughn, PharmD ("Vaughn Report") on May 20, 2021. (*Id.* at 3; *see also* Docket Entry 137-1.) Plaintiff did not supplement her expert reports pursuant to Rule 26(e), but rather served a rebuttal report by expert toxicologist Trevonne Thompson, MD ("Thompson Report") on June 21, 2021, pursuant to Federal Rule of Civil Procedure 26(a)(2)(d)(ii). (Docket Entry 138 at 3; *see also* Docket Entry 137-2.) Defendants filed the foregoing motion shortly thereafter. (Docket

24

Entry 137.) Plaintiff responded in opposition and Defendants filed a reply. (Docket Entries 145, 152.)

Upon review of the federal and local rules and the authorities cited by the parties, the undersigned concludes as set forth below that the Thompson Report is a rebuttal report and shall not be excluded from the docket.

In the brief in support of their motion, Defendants argue that the Thompson Report should be excluded for several reasons. (*See generally* Docket Entry 138). First, Defendants contend that the Thompson Report does not constitute a rebuttal report because it "renders the same core causation conclusions" expressed in the expert report of Dr. Kris Sperry. (*Id.* at 2, 5.) Defendants further argue that, because the Thompson Report is alleged affirmative evidence, Plaintiff was required to disclose it on or before their March 22, 2021 deadline for expert reports. (*Id.* at 5.) Plaintiff vigorously opposes Defendants' characterization of the Thompson Report as affirmative evidence and argues that the Thompson Report focuses on rebutting the opinions contained in the Vaughn Report from the perspective of a medical toxicologist. (Docket Entry 145 at 9.)

A rebuttal report is one "intended solely to contradict or rebut evidence on the same subject matter identified by another party. . . ." Fed. R. Civ. P. 26(a)(2)(C)(ii). A rebuttal report counters new facts presented by the defendant. *Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015); *but see Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) ("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports."). Here, the Thompson

Report is a rebuttal report. In preparation for his report, Dr. Thompson reviewed the Vaughn report. (Docket Entry 137-2 at 2.) While the Vaughn Report determines that N-ethylpentylone and a history of using drugs that cause cardiotoxic effects caused the deceased death, The Thompson Report argues that N-ethylpentylone and other drug abuse did not cause the deceased death and casts doubt on the case studies used in the Vaughn Report. (*See id.*)

Second, Defendants contend that "[e]ven if . . . the Thompson Report constitutes appropriate rebuttal evidence, its exclusion is still warranted" because "the default provisions of Rule 26(a)(2)(d)(ii), under which [P]laintiff seeks to proceed do not authorize expert rebuttal disclosure when a discovery scheduling order does not provide for such third-tiered rebuttal disclosure." (Docket Entry 138 at 6 (citing *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002)).) Plaintiff counters that "where a case management order is silent as to rebuttal expert reports, as is the case here, the terms of Rule 26(a)(2)(d)(ii) permit them if they are timely disclosed." (Docket Entry 145 at 4-6 (citing various district court cases from outside this Circuit).)

Rule 26(a)(2)(D)(ii) states that "[a]bsent a stipulation or court order," rebuttal expert witness testimony must be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). However, Local Rule 16.1(e) provides that the scheduling order "shall set the date on which disclosure of expert information under Fed. R. Civ. P. 26(a)(2) must be made." This Court has held that "when there is a discovery plan covering expert disclosures, the plan controls and not the explicit provisions of Rule 26(a). . . ." *Akeva*, 212 F.R.D. at 310 (determining a party's alleged rebuttal expert report did not comply with the

26

scheduling order where the scheduling order was silent as to a third tier of experts). The undersigned acknowledges that this is a minority rule not followed in many other jurisdictions. *See Teledyne Instruments, Inc. v. Cairns*, No. 6:12–cv–854–Orl–28TBS, 2013 WL 5781274, at *17 (M.D. Fl. Oct. 25, 2013) (determining that "the prevailing [interpretation of Rule 26] . . . across the country" is that Rule 26 permits the plaintiff to submit rebuttal expert witness reports under the default rules even where plaintiff "fail[ed] to set a deadline for the disclosure of rebuttal expert witness reports" in the scheduling order); *see e.g. A & J Mfg., LLC v. Kingsford Prods. Co., LLC*, No. CV 209–049, 2010 WL 1956042, at *2 (S.D. Ga. May 13, 2010), *S.E.C. v. Badian*, No. 06 Civ. 2621, 2009 WL 5178537, at *4 (S.D.N.Y. Dec. 23, 3009), and *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, C–93–20326, 1995 WL 115421, at *2 (N.D. Cal. Mar. 15, 1995).

Plaintiff claims she served the Thompson Report on Defendants on June 21, 2021 because she believed the general provisions of Rule 26(a)(2)(D)(ii) applied. (*See* Docket Entry 145.) Plaintiff further states that she did not disclose her intent to use Dr. Thompson as an expert earlier in the discovery process because she did not know she would need the Thompson Report until after she received the Vaughn Report. (*Id.* at 3.)

Here, Plaintiff followed the Rule 26(a) procedures for expert disclosure but complied with the Rule 26(a) disclosure timeline and submitted the Thompson Report to Defendants before the scheduled close of discovery. (Docket Entry 145 at 3.) The Court finds that the misunderstanding of Rule 26(a) by Plaintiff's counsel is not premised on ulterior motive. [9]

---

[9] Defendants claim that Plaintiff may have been motivated by an intent to "ambush" but do not present any evidence to support that claim. (*See* Docket Entry 138 at 7.)

This decision was not willful or made in bad faith. The Court finds that the interplay between Local Rule 16.1(e) and the default rules as set out in Rule 26(a) is confusing at best. For this reason, this Court shall not hold this misinterpretation against Plaintiff, even as to her alleged untimely filing of the rebuttal expert report. The Court acknowledges *Akeva* as cited by Defendants but finds that the distinguishable circumstances in the case at bar require the Court to maintain the Thompson Report on the docket without imposing discretionary sanctions against Plaintiff or Plaintiff's counsel. For the reasons discussed herein, the Court will deny Defendants' motion to exclude Plaintiff's rebuttal expert report.

## III. CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that Plaintiff's Motion for Leave to Amend Her Complaint or Alternatively for Reconsideration (Docket Entry 155) be **DENIED.**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reopen Discovery for the Limited Purpose of Production of Additional BWC Footage, Re-Deposing Certain Defendants and Other Material Witnesses and for Other Related Relief (Docket Entry 146) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Unseal Exhibits 1, 2 and 3 to Her Brief in Support of Her Motion to Reopen Discovery (Docket Entry 153) is **DENIED.** Exhibits 1, 2, and 3 to Plaintiff's Brief in Support of Her Motion to Reopen Discovery (Docket Entries 148, 149)[10] and exhibits 1 and 2 to Plaintiff's Motion to Amend (Docket Entries 156, 157) shall remain sealed.

---

[10] This also includes Exhibit 3 filed in hard-drive form with the Court.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Exclude Plaintiff's

Rebuttal Expert Report of Trevonne M. Thompson (Docket Entry 137) is **DENIED.**

Joe L. Webster
United States Magistrate Judge

October 18, 2021
Durham, North Carolina